[Crim. No. 3227.   First Dist., Div. One.   Oct. 15, 1956.]

THE PEOPLE, Respondent, v. WILLIAM CHARLES BALLARD, Appellant.

Benjamin M. Davis and Lionel Browne for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged by information with two violations of section 11500 of the Health and Safety Code in that on two separate dates he unlawfully sold a named narcotic. He was found guilty by a jury of both counts of the information. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

The information, in separate counts, charges that on August 3, 1955, and again on August 9, 1955, the defendant did "wilfully, unlawfully and feloniously sell a narcotic, to wit, Amidone, also known as Methadone Hydrochloride." Amidone is defined in section 11001 of the Health and Safety Code as follows:

" 'Narcotics,' as used in this division, means any of the following: . . .

"(j) Amidone. Amidone shall mean any substance identified chemically as 4.4-diphenyl-6-dimethylamino-heptanone-3, or any salt thereof by whatever trade name designated."

In the opening statement of the prosecuting attorney reference was made to the fact that the main prosecution witness, Mantler by name, a narcotic enforcement officer, first met defendant through a police informant; that this informer on two occasions in July of 1955, took Mantler to a certain

parking lot, went over to defendant's car, returned to Mantler's car and got some money, and returned to Mantler's car with some white tablets, later analyzed as amidone. The prosecuting attorney referred to these two prior occurrences at some length, and then concluded the statement by declaring that the narcotic involved in all four transactions was amidone. Counsel for defendant moved for a mistrial, which was denied.

At the trial the prosecution produced three witnesses, while the defense produced none. A chemist in the Bureau of Narcotics stated that he had analyzed the tablets secured in all four transactions, and that all of them were amidone, a narcotic. The tablets from all four sales were introduced into evidence, the tablets which had been secured by the informant being admitted over defendant's objections.

Narcotics Officer Mantler testified that on July 26th and 30th, 1955, he and the informant drove to the parking lot, that the informant left his car with marked money, went to defendant's car, and returned in a few moments with amidone tablets. Defendant objected to this testimony. Mantler also testified that on August 3d the informant introduced Mantler and the defendant and Mantler purchased directly from defendant 25 white tablets, afterwards determined to be amidone, for $50. Thereafter, Mantler had several telephone conversations with defendant in an attempt to arrange another sale. On August 9th this second sale was consummated. Mantler, by prearrangement, met defendant in the parking lot, gave defendant $400 in marked money, and received from defendant 200 white tablets, afterwards ascertained to be amidone.

Defendant was arrested later that night, and thereafter Mantler had three conversations with him. In the first two the defendant either denied ever having met Mantler before, refused to talk, or requested that he be permitted to see an attorney. In the third conversation defendant told Mantler that after the $400 transaction he thought he was being followed and when he was unable to elude his followers, he burned the $400. He also told Mantler that he sold him the tablets because he thought Mantler was sick and an addict and needed help.

The third witness produced by the prosecution was another narcotic official. He testified to observing Mantler talking with defendant on August 9th. He and another officer tried

to follow defendant after that meeting, but they lost him. They found defendant later that night and arrested him. They searched defendant, his car and his residence, but found no narcotics and no trace of the $400.

The first contention of appellant is that the information does not allege a public offense. This contention requires but scant consideration. Appellant misconstrues the information by contending that he was charged with having sold, on two occasions, "Amidone, a narcotic, to wit: Methadone Hydrochloride." The information charges the sale of "a narcotic, to wit, Amidone, also known as Methadone Hydrochloride." Thus, the information did not define amidone as methadone hydrochloride, but simply averred that amidone was also known as methadone hydrochloride. While an information must be sufficiently definite to enable the accused to know with what he is charged (*People* v. *Horiuchi,* 114 Cal. App. 415 [300 P. 457]), the information here meets all of the requirements. Uncertainty is created only by misquoting the actual charge. Appellant was clearly charged with selling a narcotic, amidone. The later part of the charge "also known as Methadone Hydrochloride" can, if necessary, be disregarded as surplusage. (*People* v. *Beesly,* 119 Cal.App. 82 [6 P.2d 114, 970]; *People* v. *Nordeste,* 125 Cal.App.2d 462 [270 P.2d 530].)

Appellant next attacks the sufficiency of the evidence. He admits that Mantler's testimony is sufficient to show that appellant sold the officer certain white tablets, and that the chemist testified that these tablets were amidone, but contends that no one testified that the tablets were amidone as defined in the statute above quoted. The point is without merit. The chemist was called as an expert. He testified that the tablets were amidone, a narcotic, and that dolophine and methadone hydrochloride were other names for the same substance. Thus, the evidence was sufficient on this point.

It is next urged that it was error to admit into evidence, over appellant's objections, evidence of the two prior sale transactions. The point is without merit. We are well aware of the rule that, generally, evidence of other crimes, or of general propensity towards crime, is not admissible. But it is equally true that evidence of other crimes may be admissible to show appellant's knowledge of the narcotic nature of the substance sold, or to show a common plan, scheme or design. (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Sykes,* 44 Cal.2d 166 [280 P.2d 769]; *People*

v. *MacArthur*, 126 Cal.App.2d 232 [271 P.2d 914].) This was the theory advanced by the prosecutrix at the time of the trial, and the theory upon which the evidence was admitted. The evidence was properly admissible on either of these theories.

The real question on this issue relates not to the admissibility of the evidence, but to the instruction given in reference to the evidence. The challenged instruction reads as follows: ''There was some evidence introduced here regarding some prior transactions prior to the third of Aug. and prior to the ninth of Aug. You are concerned in this case only with these two charges, that is, the charge of selling amidone on the third of Aug. and the charge of selling amidone on the ninth of Aug. and you need not go any further than that. The evidence of the other two transactions were [sic] introduced solely for the purpose of showing general customary habit of the defendant if it showed that, and just what weight it is to be given is up to you, but it is not a charge against the defendant and does not constitute one of the counts in this complaint.''

This instruction contains some unfortunate language. The statement that the evidence was introduced ''solely for the purpose of showing general customary habit'' is ill-chosen because it could mean that such evidence was offered to show that defendant had a ''general customary habit'' to be a criminal—i.e., had a criminal disposition. If the instruction meant that, it clearly was erroneous. (See cases collected 18 Cal.Jur.2d p. 583, § 136.) But the language used in the instruction, while unfortunate, reasonably could not have misled the jury. That is so, because, when the evidence of the other crimes was offered and appellant had objected, the prosecutrix told the jury that the evidence was offered to show knowledge on the part of appellant and to show a general plan or scheme. The trial court correctly ruled that it was admissible for those purposes. Thus, the jury must have connected these limitations with the general language of the instruction. It must be remembered that in a case involving section 11500 of the Health and Safety Code the prosecution must show that the defendant knew the narcotic character of the substance sold by him. (*People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433]; *People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40].) The evidence of other sales tended to show that the two offenses charged were not isolated

transactions, and that appellant had made prior sales of the same narcotic. Thus, this was some evidence that appellant had the "general customary habit" of selling amidone, and this was some evidence that appellant had knowledge of the character of the substance he was selling. So interpreted, the instruction was not erroneous.

Moreover, even if the instruction were erroneous it could not have been prejudicial, under the facts. The evidence as to the two sales charged was direct, positive and corroborated. Defendant did not see fit to take the stand to contradict this evidence.

Appellant makes objections to several other instructions that need not be separately considered, because the objections are clearly without merit. He also objects to the failure of the trial court to give instructions on entrapment. ▉ Entrapment is, of course, an affirmative defense. Defendant offered no testimony on the issue at all, but claims that the prosecution's evidence shows entrapment. All that the prosecution showed was that the informer was working under the direction of the police. The evidence relied on simply showed that the police furnished a willing customer. ▉ Merely furnishing an opportunity to commit the crime in this fashion is not evidence of entrapment. (*People* v. *Lindsey*, 91 Cal. App.2d 914 [205 P.2d 1114]; *People* v. *Alamillo*, 113 Cal. App.2d 617 [248 P.2d 421].)

Error is also claimed by reason of certain comments made by the trial judge. The record shows that after the jury had commenced deliberating, it returned to the courtroom to ask some questions. The jury wanted to know what the court's instruction relating to the failure to introduce the $400, or any part of it, into evidence had been. Actually, no instruction on this matter had been given, and none was offered by either side. The foreman of the jury told the court that the jurors wanted to know "if the money is part of the evidence. We want to know your instructions on the money part of it." And he also stated: "The money part, whether you instructed us that it would have a bearing on the case or not, and also we want to hear Mr. Davis' last arguments." Another juror asked: "Didn't you instruct us to disregard the absence of the money as evidence?" Then the following occurred:

"The Court: It hasn't anything to do with the case at all.

"The Foreman: That is what we wanted to know.

"The Court: It has nothing to do with the case. All you have to do is decide these two questions: Was this narcotic

sold by the defendant on the third of Aug. or not? Was it sold on the ninth of Aug. or not? That is all you have to decide. What became of the money is not important. It does not make any difference what became of it. You are not suing for the money.

"Any other questions?"

After consultation with the other jurors the foreman stated that no one now wanted to hear defense counsel's last argument as previously requested.

These comments by the court are not accurate and in some respects are misleading. While it is certainly true that it was not necessary for the prosecution to show that the appellant had the money or any part of it in his possession when arrested, and it was not necessary for the prosecution to account for the money, nevertheless it is not strictly true that the fact appellant did not have the money when arrested "hasn't anything to do with the case at all." The presence or the absence of the money several hours after the charged sales was, of course, relevant evidence, but it was not essential evidence. The failure to produce the money was certainly relevant on the issue of the credibility of the officer, that is, as to whether any sales at all had taken place. The court's comments, above quoted, made no reference to this phase of the case, and were therefore not accurate.

But although the comments are subject to criticism, we do not think that they were prejudicial. Appellant made no objection to the comments, nor did he ask for clarification. The court had fully instructed the jury on the basic issues involved. The court gave full and complete instructions on the burden of proof and the presumption of innocence. The basic issue was whether the two charged sales had been made. This issue was definitely left to the jury. Thus, when the challenged comments are read in the light of the instructions and evidence as a whole, we do not think that the remarks were prejudicial.

The other points raised do not require discussion.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.