[Crim. No. 5660.    Second Dist., Div. Three.    Dec. 28, 1956.]

THE PEOPLE, Respondent, v. ALBERT JOHN BAKER, Appellant.

Ernest L. Graves for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Baker and one Gonzales and one Penalver were charged with unlawfully selling heroin. Baker and Gonzales admitted allegations of the information that they had been convicted of being addicted to the unlawful use of narcotics, a misdemeanor. Penalver pleaded guilty. In a jury trial, Baker and Gonzales were found guilty. Baker appeals from the sentence and judgment.

Appellant contends that there was prejudicial misconduct on the part of the deputy district attorney; that the judge erred in rulings regarding admissibility of evidence; and that the evidence was insufficient.

On August 6, 1955, from noon until 1 p. m., deputy sheriffs Natividad and Sperry, who were in a room in the Burlington Hotel in Los Angeles, observed Baker, Gonzales and Penalver who were at the Alan Hotel across the street from the Burlington. About noon the officers saw Baker standing outside the Alan Hotel, where Baker met a man. About 15 minutes later, Officer Natividad saw another man hand something to Baker. Then the officer saw Baker enter the Alan Hotel, return within a few minutes, and touch the man's hand. A few minutes later, Officer Natividad saw a third man touch Baker's hand. Then the officer saw Baker enter the hotel, return within a few minutes, and touch the third man's hand. The officer also saw Penalver meet Baker outside the hotel. Baker then entered the lobby of the hotel and sat in a chair next to a chair where Gonzales was sitting. Officer Natividad, after marking the serial number of a $10 bill (his own bill) on a match book cover, went across the street and talked to Penalver who was in front of the Alan Hotel. Then the officer and Penalver went into a café (near the hotel) and approached Baker and Gonzales who were sitting, side by side, at the counter. Officer Natividad testified further, as follows: Penalver told Baker that Natividad (officer) wanted to purchase three capsules of heroin for $9.00; Baker asked Penalver if Natividad was all right; Penalver replied that he was all right; Baker said, "Give me the money"; Penalver handed the marked $10 bill to Baker, who returned $1.00 in change; Baker told Gonzales to go upstairs and get three "caps"; then Gonzales left the café; Baker told the officer to wait outside; Penalver and the officer went outside, and approximately two minutes there-

after Gonzales came from the Alan Hotel and entered the café; Penalver and the officer followed him into the café; Gonzales handed a piece of rubber balloon to Penalver; the officer, in the presence of Baker and Gonzales, extended his hand and asked Penalver to give him (officer) the caps; Penalver handed the piece of balloon to the officer and stated: "There are three caps inside, next time you trust me"; the officer then returned to the Burlington Hotel and had a conversation with Officer Sperry; both officers then crossed the street and arrested Penalver, who was near the café; while Officer Sperry remained with Penalver, Officer Natividad went into the lobby of the Alan Hotel, where Baker and Gonzales were sitting, and arrested them; the officer took them to the place where Officer Sperry and Penalver were; Officer Natividad searched Baker and found $78 or $178 on his person; the officer compared a $10 bill, which was found in the search, with the number he had made on the match book cover; the number on the bill and the number on the cover were the same.

The three capsules, received in evidence as Exhibit 1, contained heroin.

Officer Natividad testified further that, after the defendants had been taken to the narcotic bureau, the officers had a conversation with them individually and collectively. The attorney for Gonzales objected to testimony by Officer Natividad as to his conversation with Gonzales. The judge asked the deputy district attorney if he intended "to produce some conversation that would amount to either a confession or ——." The deputy replied in the affirmative. The judge then said that a motion to strike the testimony might be renewed if the deputy did not "connect it up." The deputy asked Officer Natividad to relate the conversation he had with Baker. The officer testified that: he asked Baker if he was selling or had sold heroin; he replied in the negative; the officer told him that the officers had watched from across the street and that Baker sold narcotics to three individuals and "we [officers] know" that he was selling narcotics; Baker made no response; "I [officer] asked defendant [Baker] if he was addicted to the use of narcotics and *he told me that he had been previously addicted to the use of narcotics* but he was not using narcotics at the time"; the officer told Baker that the $10 bill, which the officer took from him, was a marked bill; the officer asked Baker where he secured the bill; he replied

that he received it in the café from someone who owed him money, but he did not know the person's name. The attorney for Baker and the attorney for Gonzales moved to strike out all the testimony regarding the conversations upon the ground that the conversation did not constitute a confession or admission. The motions were granted, except as to the portion of the conversation relating to the $10 bill. The judge instructed the jury to disregard all the conversation except the portion relating to the $10 bill.

Officer Sperry testified, in substance, the same as Officer Natividad had testified with respect to: observing the three defendants from the Burlington Hotel; marking the serial numbers of the $10 bill on the match book cover; comparing the serial numbers after the arrests. He testified further that the amount of money taken from Baker, when he was searched, was $178. He also testified that after the defendants were arrested, the officers had a conversation with them wherein the three defendants were present. The deputy district attorney asked him to relate the conversation. At the request of the judge the attorneys approached the bench, and then the judge said that the only part of the conversation that would be in the category of an admission was the part relating to the $10 bill, that the rest of the conversation was a denial of accusatory statements, and that the testimony as to the conversation should be confined to that part relating to the $10 bill, and only that part should be referred to. After the conference at the bench, the deputy asked the witness to relate the conversation concerning the bill. The officer testified that Officer Natividad asked Baker where he got the $10 bill; Baker replied that he got it as payment of a debt. Then the deputy asked the witness if he recalled any other conversation *"other than what Mr. Natividad has testified to?"* The witness replied, "Merely that Mr. Penalver" stated that he (Penalver) was not selling narcotics at that corner, that he had no narcotics of his own, and he had obtained them from someone else.

Defendant testified to the effect that he did not sell heroin or anything to the officer; that he was not implicated in the matter charged against him; that Penalver, who owed him $15, paid $9.00 of the indebtedness while Baker and Gonzales were having lunch in the café.

Appellant contends, as above stated, that there was prejudicial misconduct on the part of the deputy district attorney. This contention is based upon questions by the dep-

uty wherein he asked the officers to relate conversations which they had with Baker. When the deputy asked Officer Natividad to relate such a conversation, he (deputy) stated in effect that he intended to show a confession or admission. A part of the conversation, as related by that officer, was: "I asked the defendant if he was addicted to the use of narcotics and he told me that he had been previously addicted to the use of narcotics but he was not using narcotics at the time." All the testimony as to that conversation, except as to the $10 bill, was stricken out. Thereafter the deputy asked Officer Sperry to relate the conversation which he and Officer Natividad had with Baker. Thereupon, in a conference with the attorneys at the bench, the judge asked the deputy if "this conversation" was the same conversation that Officer Natividad had testified to. The deputy replied in the affirmative. The judge admonished him to confine the testimony, regarding that conversation, to the part of the conversation relating to the $10 bill. The deputy asked the officer to relate the conversation concerning that bill. After the officer had answered that question, the deputy asked him if he recalled any other conversation "other than what Mr. Natividad has testified to?" That question and the answer thereto implied that Officer Sperry did recall the conversation which Natividad had related and which had been stricken out—the conversation wherein Baker said that he had been previously addicted to the use of narcotics. In view of the previous order striking out the same testimony, and in view of the admonition of the court restricting the subsequent testimony as to the conversation, that question should not have been asked. ■ The statement that Baker had been addicted to the use of narcotics was not an admission tending to prove the charge of selling narcotics, and the statement was inadmissible. Furthermore, as above stated, Baker had admitted the allegation of the information that he had been convicted of being addicted to the unlawful use of narcotics. ■ The statement (in the conversation) that he had been addicted to the use of narcotics was not a statement that he had been convicted of being so addicted, but it was closely related thereto, was inadmissible, and tended to prejudice the defendant. Although the improper statement with respect to addiction, as originally included in the testimony of Officer Natividad, was stricken out and the jury instructed to disregard it, it is doubtful if the prejudicial effect of the statement was removed. In *Helton* v. *United States*, 221 F.2d 338, wherein the charge

was possession of marijuana, an officer testified that the accused told him that "he had been smoking marijuana intermittently very seldom for the past four or five years." The trial court therein, upon request of the prosecuting attorney, ordered the statement stricken out. The court said at page 340: "It is true that here the trial court ordered the improper evidence stricken from the record, but he gave no instruction whatever to the jury to disregard the improper testimony. In fact, in the circumstances of this case, it is doubtful that any instruction, however strong, would have succeeded in destroying the picture which this remark created in the jury's mind . . . . ." In the present case the improper statement regarding addiction, which had been made by Officer Natividad, was again impliedly placed before the jury by the deputy's question as to whether Officer Sperry recalled any other conversation other than what Officer Natividad had testified to. Although no objection was made to the question, the court had theretofore ruled that such statement as to addiction was inadmissible and had ordered, in effect, that the testimony of Officer Sperry exclude reference to addiction.

It is of frequent occurrence in criminal trials that police officers, in relating conversations with the defendant, testify to statements by the latter that are detrimental to him and inadmissible as evidence, thus necessitating a motion to strike the evidence, the granting of the motion, and an admonition to the jury to disregard it. This was true of the testimony of Officer Natividad as to Baker's admission of the use of narcotics. ▆▆ We said in *People* v. *Bentley*, 131 Cal.App.2d 687, 690 [281 P.2d 1] : "The district attorney knew, or should have known, the testimony the officer was going to give and should have warned him not to make the statement. Every prosecutor who offers a witness to testify to conversations with an accused should know what the witness will relate if given a free hand. The prosecutor has the duty to see that the witness volunteers no statement that would be inadmissible and especially careful to guard against statements that would also be prejudicial." It must be presumed here that the deputy district attorney had discussed with Officer Natividad what his testimony would be as to his conversation with defendant and knew that it would include defendant's admission of prior addiction to narcotics. If so, it was his duty to instruct the witness not to relate that alleged admission. A claim of ignorance on the part of the prosecutor as to the testimony the witness would give cannot be reconciled with

the affirmative duty of fairness in the trial to which prosecutors must be alert at all times.

The deputy district attorney was guilty of prejudicial misconduct.

In view of the above conclusion, it is not necessary to determine other contentions on appeal.

The judgment is reversed and the cause is remanded for a retrial. The purported appeal from the sentence is dismissed.

Shinn, P. J., and Vallée, J., concurred.