[Crim. No. 6515. Second Dist., Div. One. May 7, 1959.]

THE PEOPLE, Respondent, v. ALBERT JOHN BAKER et al., Defendants; RICHARD FUTOSHI SAIKI, Appellant.

Bradford A. Arthur for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David B. Allen, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a "decision," judgment and sentence, and from a denial of a motion for a new trial.

The appellant and Albert John Baker were charged in an information in Los Angeles County with possession, on April 26, 1958, of a narcotic, namely amidone. The information also set forth that the appellant was, on or about November 6, 1953, convicted of the crime of violation of section 11500, Health and Safety Code. The appellant pleaded not guilty and denied the prior conviction. A jury trial was waived and it was stipulated that the cause be submitted on the testimony taken at the preliminary hearing, each side reserving the right to produce further evidence. Exhibits were received into evidence, and the defendant and one other witness testified in behalf of the defendant. The court found the defendant guilty as charged, and found the prior conviction to be true and sentenced the defendant to the state prison for the time prescribed by law. The appellant's motion for a new trial was denied. The defendant Baker pleaded guilty.

This appeal will be considered as an appeal from the judgment and from the order denying the motion for a new trial.

A résumé of the facts most favorable to the respondent is as follows:

On April 21, 1958, Edward Sanchez, a police officer for the city of Los Angeles, received information from a reliable informant that the defendant Baker was selling narcotics out of room 8 of a hotel located on North Soto Street. The officer had received information from the informant before, and it had proved to be reliable. The hotel mentioned by the informant was kept under observation on April 22nd and 23rd. At about 8:30 o'clock p.m., on April 26th, the informant told Officer Sanchez that the defendant Baker at that time had a large amount of narcotics secreted in a jacket in the closet of his room. Officers Sanchez and Valdez went to the address and again placed it under surveillance. At about 10 o'clock p.m., they saw the defendant Baker and the appellant Saiki enter the hotel and proceed to room 8.

The hotel register showed that room 8 had been registered to the defendant Baker for about five weeks. The officers obtained a key to the room from the hotel manager and then went to the door of room 8 and listened for about 10 to 15 minutes. They heard male voices inside of the room saying such things as, "Get the stuff ready," "Here is a gram capped. Tie it up," and "I need to fix." The officers did not recognize the voices.

Officer Sanchez put the key in the lock of the door and attempted to open it, while identifying himself in a loud voice at the same time. The door was held closed by someone on the inside, so the officers thereupon forced it open. Defendant Baker was behind the door. The appellant Saiki was seated at the far end of the room, and as the officers entered Saiki threw a hypodermic needle on to the floor. Officer Sanchez watched the needle from the time it left the appellant's hand to the time it hit the floor. The officer then picked up the needle.

Both defendants were arrested, handcuffed and searched. On top of a table at the far end of the room were two rubber containers, each containing a quantity of whitish powder. One container was tied and the other was open. Also on top of the table, Officer Sanchez found about 10 rubber balloons of different colors. In a cellophane paper on the floor by the table, he found numerous empty gelatin capsules.

Officer Sanchez had a conversation with the defendants in the room immediately after the arrest. The two arresting officers and the two defendants were present, and the state-

ments made by the defendants were free and voluntary. Defendant Baker was told that the officers had information that he had a large amount of narcotics in his jacket pocket. Baker stated that he did have, but that he had taken it out, and that was the "stuff" that was on the table. When asked why it was on the table instead of in his jacket, Baker stated that, "we" were in the process of capping it up when the officers came in.

Appellant Saiki was asked where he had met the defendant Baker, and he stated that he had met him earlier in the day and "they had come over to the apartment here to cap some of this stuff up." The officer further testified, "I asked the defendant Saiki how much stuff he was using and he said he was using approximately three times a day. I asked him why he threw the hypodermic needle to the floor and he didn't give me any answer."

The items heretofore mentioned were then taken to the police department and William King, a qualified forensic chemist employed by the Los Angeles police department, made a chemical analysis of the white powder contained in the two rubber containers found therein. There were 15 grams of powder in one container and 4.5 grams in the other. The reporter's transcript shows that the chemist testified that based upon his analysis he formed the opinion that the white powder contained "a narcotic known as amadon."

The appellant contends:

(1) that the evidence was not sufficient to sustain the conviction;

(2) that the trial court erred in the admission of evidence obtained by illegal search and seizure; and

(3) that the prosecutor was guilty of prejudicial misconduct in presenting evidence obtained by illegal search and seizure.

The appellant asserts that the information charged him with the unlawful possession of "a narcotic, to wit, amidone," and that the reporter's transcript discloses that he was convicted of possession of "amadon," and that therefore the respondent has failed to establish the corpus delicti of the crime alleged. Apparently the court reporter spelled the word as it sounded to him and without checking to see if his spelling was correct. We note, however, from the transcript that in most places where the word "amadon" appears, it is referred to as a narcotic, and we are convinced that no miscarriage of justice has resulted from the mis-

spelling of the name of the drug by the court reporter. The pronunciation is similar if not identical, and there can be no valid contention that there is a case of variance in the proof. The corpus delicti was properly established. The transcript shows definitely that the appellant had possession of a "narcotic known as amadon" and under the circumstances, it was not necessary to then establish that the amidone in this case met the chemical formula of amidone as defined in the Health and Safety Code, section 11001, subdivision (j), which reads as follows:

"(j) Amidone. 'Amidone' shall mean any substance identified chemically as 4.4-diphenyl-6-dimenthylamino-heptanone-3, or any salt thereof by whatever trade name designated."

The appellant was charged in a proper information and he knew with what he was charged and made his defense thereto, which in effect was that he was in the hotel room at the time but did not have possession of the narcotic. (*People v. Ballard,* 145 Cal.App.2d 94 [302 P.2d 89].)

The next contention of the appellant is that the court erred in the admission of evidence, and he now asserts that it was obtained by an illegal search and seizure.

Part of the information which led to the arrest of the appellant and his codefendant and to the seizure of the narcotic was furnished to the arresting officer by a reliable informant. This informant's information had proved reliable in the past and had led to seven arrests, including two narcotic arrests and convictions. Another part of the information leading to the arrest came from the officers' personal observation. Before entering the codefendant's hotel room the officers listened at the door and heard the voices in the room saying, "Get the stuff ready," "Here is a gram capped. Tie it up," and "I need to fix."

In response to questions on cross-examination, the officer testified that he knew the name and the telephone number of the informant, but not his address. The officer was never asked to disclose the name, the telephone number, the address, or any information regarding the identity of the informant. Furthermore, the narcotics seized were received into evidence without any objection by either of the defendants.

In *Priestly* v. *Superior Court,* 50 Cal.2d 812, at pages 819-820 [330 P.2d 39], it was said:

". . . A defendant cannot raise the problem of nondisclosure in the appellate courts when he did not seek disclosure at the trial or preliminary hearing or did not move to strike

the testimony on a refusal to disclose. (Citing cases.) Upon his failure to do either at that time, evidence of information from a reliable informer is thereafter unobjectionable and may be sufficient to sustain a finding that the search was made with reasonable cause. (Citing cases.)''

For all that appears, in this case the officer may have been willing to disclose the informant's name had he been asked to do so. It was appropriately said in *Coy* v. *Superior Court*, 51 Cal.2d 471, at page 473 [334 P.2d 569]:

''. . . The prosecution may have had evidence other than the information of the informer to justify the search or it may have been willing to waive the privilege of nondisclosure if its case would otherwise fail, and it was entitled to an opportunity to produce such evidence or waive nondisclosure. It was not called upon to do so, however, while evidence of reasonable cause stood unchallenged in the record. To hold that the magistrate or trial court must strike the evidence on its own motion when the objection to it has not been called to its attention would open the door to needless repetitions of preliminary hearings. It would also permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal and a new trial ordered. No undue burden is placed on the defendant by requiring him to make a motion to strike when the basis for excluding evidence theretofore properly admitted becomes apparent, and there is no basis for departing from the settled rule requiring such a motion (citing cases and authority) in the present situation.''

There was, without question, reasonable and probable cause for the arrest and seizure of the narcotics in this case because of the information received from the reliable informant and the statements of the defendants which the officers heard just before they entered the room. (See *People* v. *Richardson*, 51 Cal.2d 445, 447 [334 P.2d 573].)

The last contention of the appellant is in effect that the district attorney committed prejudicial misconduct because he introduced the evidence heretofore related, which he, the appellant, now asserts was obtained by illegal search and seizure. We deem the contention to be entirely without merit, without further discussion.

The judgment and the order denying motion for a new trial are, and each is affirmed. The purported appeal from the ''decision'' and the sentence is dismissed.

White, P. J., and Lillie, J., concurred.