[Crim. No. 6738.    Second Dist., Div. Three.    Jan. 25, 1960.]

THE PEOPLE, Respondent, v. ROBERT GALLAGHER, Appellant.

Robert Gallagher, in pro. per., for Appellant.

No appearance for Respondent.

SHINN, P. J.—Robert Gallagher, Diane Kruger, Walter Vance Jolly and Phinas Eugene Green were jointly charged with unlawful possession of heroin.  Diane Kruger and Jolly pleaded guilty.  Gallagher, who was represented by counsel, was convicted in a nonjury trial.  He made a motion for

new trial which was denied, probation was denied and he was sentenced to state prison. He gave notice of appeal in propria persona from the judgment and sentence which we construe to be a single appeal from the judgment.

Upon defendant's request for appointment of counsel, the matter was referred to the Los Angeles Bar Association Committee on Criminal Appeals; a report was filed stating that after an examination of the record no meritorious ground of appeal was found. From our examination of the record it appeared that no benefit would result to the defendant or the court from the appointment of counsel; the request was denied and defendant was duly notified and given time to file a brief; no brief has been filed.

There was evidence of the following facts. Mrs. Kruger was living at 8146 Cheyenne Street in Downey with her mother and small son. Police officers of Downey received information that narcotics were being sold on the premises. They went to the house next door, from which they observed the Kruger house. Several days before the arrests they heard a female voice and a male voice in conversation. They heard the woman ask if "the stuff he was bringing was good or if he had been cutting it; she had bought two caps and it wasn't very good." The man said he "was not cutting it." On September 12th, three days before the arrest, a black Chevrolet drove into the alley; Mrs. Kruger went to the car, exchanged something with the occupant of the car, who then drove away. On the same day Officer Harrington heard Gallagher talking on the telephone; he said "where?" and then "I'll meet you at the big market at Paramount and Imperial." Gallagher then left in a green Buick and returned a few minutes later. On the same day Gallagher got another phone call which he answered and said "how many?" and then "two caps. No, not there, we'll meet you at the little store on Gardendale." Soon afterwards, he left, walking toward the store, which was two blocks away. On September 15th, the officer had seen Jolly and Green enter the house from a white Mercury which belonged to Green's wife. The arrests were made immediately thereafter.

Officer Siple testified that on September 13th he heard a telephone being dialed and a male voice identified as that of Gallagher saying "this is Bobby" and "want a score this afternoon" and then "Diane and I are going out this evening. If he wants a score it will have to be before six" and then "we are going to the hock shop on Central Avenue to get my suit back." On another occasion he heard Gallagher, ap-

parently speaking over the phone, say "how much?" then "where?" and "when?" after which he left in the 1953 Buick. On another occasion the same voice said "that is too far. Make it the small grocery store at Gardendale" and shortly afterwards he heard the word "dime" and the names "Larry and Lucky," also "two caps at the little store," after which Gallagher left.

Both Officer Harrington and Officer Siple talked with Gallagher later and identified his voice as that of the person whose voice they had heard on the telephone.

Officers Martin, Ferguson and Siple sought entrance to the house, asked Gallagher for Mrs. Kruger and were permitted to enter. Hearing that a toilet was being flushed they placed all persons in the room under arrest. These were Mrs. Kruger, Jolly, Green, Gallagher and a real estate agent who was evidently an innocent bystander. The bathroom door was locked; the officers broke it open; Jolly and Green dived out of a window; the premises were searched; 49 capsules and 3 and ½ grams of heroin and a hypodermic kit were found. The capsules included one package which was given them by Mrs. Kruger's small son who found it outside a window. The box containing heroin was taken from the top of a dresser; when Gallagher was questioned he said he was using the dresser. Another box was taken from a top drawer of the dresser. Jolly and Green were arrested as they were running away. Jolly spit out a package containing heroin; another package was found on the ground about 3 feet behind Green. All the defendants testified. Green denied having any of the heroin. Jolly admitted having $300 worth in his possession of which he intended to purchase half and expected Mrs. Kruger to purchase half. Mrs. Kruger testified that all the heroin except that possessed by Jolly belonged to her; she was a regular user; Gallagher used only the bottom drawer of the dresser; the heroin that was found in the drawer belonged to her. Gallagher testified that he had been living at the Kruger home four days; he had had a disagreement with his mother; he had talked to no one over the telephone about narcotics; he did not use them, had never seen any and would not recognize heroin if he saw it. He testified that he had been committed voluntarily to Patton State Hospital for treatment as a narcotic addict; his father had accompanied him to the hospital and he admitted addiction because he did not want to be entered as a mental patient. Officer Ferguson, recalled, testified as an expert that while Gallagher was under

arrest he observed his arms and that they contained puncture scars and conditions such as are caused by hypodermic injections; they were similar to those he had frequently observed on the arms of addicts. Thereafter Gallagher testified, denying the presence on his arms of marks or scars as described by Ferguson.

The only possible question on the appeal is whether the officers had reasonable cause for arresting Gallagher. Their entry into the house was not illegal; they were admitted upon request. We are of the opinion that the arrest of Gallagher was not illegal. It was made immediately upon the officers hearing the flushing of a toilet which was a suspicious circumstance indicating that incriminating evidence was being disposed of. However, the principal reason for the arrest was the deductions which the officers made from the telephone conversations and other conversations they overheard which they understood to be concerned with traffic in narcotics. When they entered the house Gallagher was stripped to the waist, indicating that he was at home on the premises; he was the one who had been seen leaving the house on foot to deliver "2 caps" and leaving on another occasion in a car after asking "how much?" "where?" and "when?"; he was the one who was in the house when the officers heard a discussion as to whether "the stuff" was good and when a man asked whether someone wanted "a score this afternoon." The officers had seen something delivered to the occupant of a car stationed in the alley. All this occurred on the 11th, 12th and 13th of September. Jolly and Green came on the 15th.

The word "cap" is frequently used by purveyors of heroin to indicate the number of capsules in which it is frequently sold. (*People* v. *Baker,* 147 Cal.App.2d 319 [305 P.2d 97]; *People* v. *Huerta,* 148 Cal.App.2d 272 [306 P.2d 505]; *People* v. *Gonzalves,* 158 Cal.App.2d 98 [322 P.2d 255]; *People* v. *Poe,* 164 Cal.App.2d 514 [330 P.2d 681]; *People* v. *Baker,* 170 Cal.App.2d 240 [338 P.2d 556]; *People* v. *Montez,* 175 Cal.App.2d 303 [345 P.2d 938].)

The word "score" is commonly used to indicate a purchase of narcotics. (*People* v. *Bryant,* 157 Cal.App.2d 528 [321 P.2d 45]; *People* v. *Ramos,* 158 Cal.App.2d 156 [322 P.2d 51]; *People* v. *Jackson,* 163 Cal.App.2d 355 [329 P.2d 329]; *People* v. *Pettyjohn,* 172 Cal.App.2d 188 [342 P.2d 416]; *People* v. *Shephard,* 175 Cal.App.2d 297 [345 P.2d 956].)

The officers had had schooling and long experience in the investigation of activities in narcotics. They no doubt were familiar with the use of the mentioned terms and were convinced that the house they had under surveillance was a nest of narcotics users and purveyors of narcotics. They had reasonable and probable cause for making the arrests that were made and for the subsequent search which was incidental thereto. The evidence of defendant's guilt was convincing; the trial was conducted without error.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.