[Crim. No. 1752. Fifth Dist. Jan. 21, 1975.]

**THE PEOPLE,** Plaintiff and Respondent, v.
**LEONARD EUGENE GLASS,** Defendant and Appellant.

**COUNSEL**

Richard E. Salisch, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Eddie T. Keller, Willard F. Jones and Peter .McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**Brown (G. A.), P. J.**—Appellant was convicted by a jury of possession of amphetamines for sale (Health & Saf. Code, § 11351) and was found not guilty of possession of hypodermic syringes (Bus. & Prof. Code, § 4143, subd. (a)). On this appeal from the judgment he urges insufficiency of the evidence to support the verdict and misconduct of the prosecutor. We find merit in his contentions and reverse the judgment.

■ To support a conviction of possession of amphetamines for sale, it must be shown that the appellant exercised control or had the right to exercise control over the controlled substance, that he had knowledge of the presence of the controlled substance, that he had knowledge of its nature, and that he had the specific intent to sell the same. (*People* v. *Newman* (1971) 5 Cal.3d 48, 52-53 [95 Cal.Rptr. 12, 484 P.2d 1356].)

These elements may be established by circumstantial evidence and any reasonable inferences drawn therefrom. (*People* v. *Newman, supra,* 5 Cal.3d at p. 52.)

Resolving all conflicts in favor of the respondent, the proof in this case showed that sheriff's deputies went to the residence at 4919 Sammons Street, Bakersfield, at about 11:30 a.m. to execute a search warrant for the premises and the person of the appellant. After knocking on the door and ringing the doorbell for about five minutes, Delores Shrout,[1] dressed in a robe and barefooted, opened the door. The deputies entered and began the search.

In about 60 seconds after entry, the deputies entered the bedroom area and saw appellant lying on the bed; the bottom one-half of his torso was covered with blankets. When appellant saw the officers he pulled the bed covers over his entire body, including his head. Upon orders, appellant exited the bed; he was wearing a pair of Levi trousers and was also barefooted. Appellant was ordered into the living room area and instructed to be seated on the couch.

A search of the house revealed the following contraband: (1) As appellant got out of bed, several small white tablets fell to the floor and landed near a man's shirt. There were no tests made to determine the contents of these tablets. (2) Near the pillow area of the bed several more white tablets were found, and under the pillow a plastic vial and bag were found containing a total of 15.58 grams of tablets containing amphetamines. (3) A package and cellophane cigarette wrapper containing a total of 1.83 grams of tablets containing amphetamines were seized from the coffee table in the living room. (4) A cigarette package containing 2.29 grams of tablets containing amphetamines was seized from Delores Shrout's purse. (5) A cigarette package containing 3.50 grams of tablets containing amphetamines was found in a vehicle parked on the premises which was registered to Delores Shrout. (6) Under the couch in the living room one large bag was found containing 16 packages, 8 of which contained 100 amphetamine tablets each and 8 of which contained 1,000 amphetamine tablets each, a total of 228.49 grams of tablets. (7) Some hypodermic needles and syringes were found in a sugar bowl and bowl of flour in the kitchen area.

Appellant had $270 in small bills on his person.

### THE Sufficiency of the EVIDENCE

■ While the presence of the amphetamines found in and around

---

[1]Delores Shrout was a codefendant and was tried separately; she is not an appellant herein.

the bed where appellant had been lying and the act of pulling up the bed covers over his entire body, including his head, would be sufficient to support a conviction for simple possession (*People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146]; *People* v. *MacCagnan* (1954) 129 Cal.App.2d 100, 104-106 [276 P.2d 679]), the quantity and manner of packaging of the tablets found in that area would not support a conviction for possession for sale. (See *People* v. *Newman* (1971) 5 Cal.3d 48, 53 [95 Cal.Rptr. 12, 484 P.2d 1356].) Of the amphetamine tablets found, the only ones that were of sufficient quantity or so packaged as to support a conviction of purpose or intent to sell were those found beneath the couch in the living room. (*People* v. *Newman, supra,* 5 Cal.3d at p. 53.) Regarding those 16 bags of tablets, one of the officers who was familiar with packaging procedures in the drug traffic testified that the eight small bags containing 100 tablets each were ordinarily sold illegally on the retail level, while the large bags containing 1,000 tablets each were normally sold illegally on a wholesale basis. There was no testimony with respect to the tablets found elsewhere, and the respondent does not contend that the tablets other than those under the couch were in such quantity or were so packaged as to support a conviction of intent or purpose to sell.

We are satisfied that the evidence was insufficient to support a finding that appellant had actual or constructive possession of the amphetamines under the couch. Constructive possession occurs when one maintains control or the right to control the contraband; and while possession may be imputed when the contraband is immediately and exclusively accessible to the accused and subject to his dominion and control or the joint dominion and control of the accused and another (*People* v. *Newman, supra,* 5 Cal.3d at p. 52; *People* v. *Harrington* (1970) 2 Cal.3d 991, 998 [88 Cal.Rptr. 161, 471 P.2d 961]; *People* v. *Francis* (1969) 71 Cal.2d 66, 71 [75 Cal.Rptr. 199, 450 P.2d 591]), there is no substantial evidence to support a finding that appellant resided at or was a joint possessor of the premises at 4919 Sammons Street or that the amphetamines beneath the couch were subject to his dominion and control.

He was discovered half-clad in bed at 11:30 a.m. Other than his boots and shirt on the bedroom floor, no other men's clothing was discovered in the residence. No letters or documents were found addressed to appellant at that address. All documents found at the house were addressed to Delores Shrout, including a Pacific Telephone bill and a payroll check. The most that can be inferred from this evidence is that appellant was a visitor at the residence on the morning of the arrest; the

usual inferences that may be drawn from joint possession and control of the premises where drugs are found are impermissible in this case.

Thus, with respect to the amphetamines beneath the couch, the proof amounted to no more than an opportunity of access to a place where narcotics were found which, without more, is insufficient to support a finding of unlawful possession. (*People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Vasquez* (1969) 1 Cal.App.3d 769, 778 [82 Cal.Rptr. 131] (cert. den., 398 U.S. 938 [26 L.Ed.2d 270, 90 S.Ct. 1840]).)

In a caveat to a statement of the substantial evidence rule, the Supreme Court in *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321], said: "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." While the elements of the offense may be established by circumstantial evidence and reasonable inferences drawn therefrom (*People* v. *White* (1969) 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600]), "Circumstantial evidence is like a chain which link by link binds the defendant to a tenable finding of guilt. The strength of the links is for the trier of fact, but if there has been a conviction notwithstanding a missing link it is the duty of the reviewing court to reverse the conviction." (*People* v. *Redrick, supra,* 55 Cal.2d at p. 290.)

In the case at bench the missing links were lack of proof of possession of or knowledge that the tablets were beneath the couch. (See *People* v. *Redrick, supra,* 55 Cal.2d at pp. 285-287, and cases cited therein; *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 345-346 [78 Cal.Rptr. 196, 455 P.2d 132] (cert. den., 396 U.S. 994 [24 L.Ed.2d 457, 90 S.Ct. 491]); *People* v. *Hunt* (1971) 4 Cal.3d 231, 236-237 [93 Cal.Rptr. 197, 481 P.2d 205]; *People* v. *Stanford* (1959) 176 Cal.App.2d 388, 391 [1 Cal.Rptr. 425]; *People* v. *Tabizon* (1958) 166 Cal.App.2d 271, 273 [332 P.2d 697].)

The presence of $270 in appellant's wallet would have some probative effect as circumstantial evidence if it was shown appellant was unemployed (*People* v. *Magdaleno* (1958) 158 Cal.App.2d 48, 52 [322 P.2d 89]). However, no such showing was made in this case.

Respondent argues that knowledge of the presence of the pills and dominion and control over the pills under the couch can be inferred

from the fact that appellant was seated on the couch and made some movement with his feet. (See *People* v. *Williams* (1971) 5 Cal.3d 211, 216 [95 Cal.Rptr. 530, 485 P.2d 1146].) Officer Gutierrez testified: "Q. And was there any type of reaction from Mr. Glass when you removed that bag? A. No, sir, I was in the living room area and I noticed that he was maneuvering with his feet and at that time I saw the bag and I just walked in and removed the bag and there was no reaction from him at all." Initially, it must be noted that appellant was seated on the couch at the direction of the officers and not by choice. Secondly, it is significant that he manifested no reaction whatsoever when the officer reached beneath the couch and removed the bag.

In *People* v. *Williams, supra,* 5 Cal.3d 211, the defendant was convicted for possession of drugs; one tablet was discovered in plain view on the floor of the automobile in the front of the seat on which the defendant was seated. There was evidence that when the officers walked up to the car, the defendant made a motion toward the center of the seat. The court said: ". . . but no such circumstances were present in the instant case. Defendant's supposed 'motion' toward the center of the seat was, at best, an ambiguous gesture and one which could hardly be characterized as 'furtive' or indicative of a 'consciousness of guilt.' [Citation.]" (5 Cal.3d at p. 216; see also *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 818-819 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

The testimony that "he was maneuvering with his feet" is also imprecise and ambiguous. In the absence of a more precise description of the movement involved, it would be pure speculation to deduce that the officer by that testimony intended to convey the notion that appellant was attempting to conceal the contraband.[2]

The Alleged *Griffin* Error (*Griffin* v.
*California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].)

In his closing argument the prosecutor, in urging the jury to find that appellant had the specific intent to sell amphetamines, stated: "There is only one way to connect by direct evidence what Mr. Glass' intent was and that is if he would take the witness stand and tell us, say that my intent was to sell those."

---

[2]It is significant that this testimony was pointed out and this argument made by respondent for the first time at oral argument.

In *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], the Supreme Court held that the Fifth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.

Several comments close to the statements in the instant case have been held to be *Griffin* error when the defendant did not testify at trial. (*Griffin* v. *California, supra,* 380 U.S. at pp. 610-611 [14 L.Ed.2d at pp. 107-108, 85 S.Ct. at p. 1231]—". . . and in the whole world, if anybody would know [how the crime was committed], this defendant would know"; *People* v. *Modesto* (1967) 66 Cal.2d 695, 711 [59 Cal.Rptr. 124, 427 P.2d 788] (cert. den., 389 U.S. 1009 [19 L.Ed.2d 608, 88 S.Ct. 574]; overruled on other grounds in *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 fn. 8 [66 Cal.Rptr. 724, 438 P.2d 372])—" 'How [the victim's panties] got over there I can't tell you, because I wasn't there. Neither was [defendant's attorney] . . . [s]o, somebody had blood on [him] who took them over there. Who had blood on him? Who is the only person around who had blood on him, besides the two little girls? You know who he is. He is sitting here in this courtroom—and just sitting' "; *Chapman* v. *California* (1967) 386 U.S. 18, 26-42 [17 L.Ed.2d 705, 711-720, 87 S.Ct. 824, 829-836, 24 A.L.R.3d 1065]—repeated references by the prosecutor that the only person who knew certain facts was defendant; *People* v. *Williams* (1971) 22 Cal.App.3d 34, 43 [99 Cal.Rptr. 103]—"It is possible there is one person and only one person that knows why he was killed, and I suggest to you that it is . . . [defendant]"; *People* v. *Ham* (1970).7 Cal.App.3d 768, 778-779 [86 Cal.Rptr. 906] (overruled on other grounds in *People* v. *Compton* (1971) 6 Cal.3d 55, 60 fn. 3 [98 Cal.Rptr. 217, 490 P.2d 537])—the court stated that defendant was in the best position to explain whether or not the car belonged to him.) In the *Modesto* and *Chapman* cases, the references were repeatedly made.

It is patent that the comment in the case at bench was both a direct reference to appellant's failure to testify and a suggestion that were appellant to take the witness stand he would provide the admission of intent to sell and that the prosecutor's comment constituted *Griffin* error.

The court properly gave CALJIC No. 2.60.[3] However, the error committed by improper comment by the prosecutor was compounded by

---

[3]At that time, CALJIC No. 2.60 provided: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way."

the giving of CALJIC No. 2.61 at appellant's request. That instruction stated to the jury: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support *by itself* a finding against him on any such essential element." (Italics added.)[4]

In *People* v. *Vargas* (1973) 9 Cal.3d 470, 477 [108 Cal.Rptr. 15, 509 P.2d 959], the Supreme Court held this instruction to be error in that "an ordinary juror reading it might assume that if the People have presented some evidence of guilt, the defendant's silence can then be considered as supplementing the People's case." (See *People* v. *Gaulden* (1974) 36 Cal.App.3d 942, 957 [111 Cal.Rptr. 803]; *People* v. *Williams* (1971) 22 Cal.App.3d 34, 44-46 [99 Cal.Rptr. 103]; *People* v. *Townsend* (1971) 20 Cal.App.3d 919, 923-925 [98 Cal.Rptr. 8].)

The prejudicial effect of the combined errors of the prosecutor's impermissible comment and the giving of CALJIC No. 2.61 must be measured by the standard of *Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711, 87 S.Ct. at p. 828]—"before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

The comment made by counsel was brief and indirect, which tends to indicate that it was harmless (*People* v. *Vargas, supra,* 9 Cal.3d at pp. 478-481; *People* v. *Modesto, supra,* 66 Cal.2d at pp. 711-714). However, in view of the paucity of evidence of guilt in this case, it is apparent to us that the errors must have served "to fill an evidentiary gap in the prosecution's case" (*People* v. *Modesto, supra,* 66 Cal.2d at p. 714; see *People* v. *Morse* (1969) 70 Cal.2d 711, 730 [76 Cal.Rptr. 391, 452 P.2d 607] (cert. den. in 397 U.S. 944 [25 L.Ed.2d 124, 90 S.Ct. 959])). Accordingly, we conclude that the error was not harmless beyond a reasonable doubt. (See *People* v. *Williams, supra,* 22 Cal.App.3d at pp. 44-45.)

Finally, we are of the opinion that the fact that appellant's counsel requested the instruction did not nullify the court's obligation to properly instruct the jury, since the record does not reflect any deliberate tactical purpose of counsel in making the request. (*People* v. *Graham* (1969) 71 Cal.2d 303, 317-320 [78 Cal.Rptr. 217, 455 P.2d 153].)

---

[4]CALJIC No. 2.61 has now been amended to delete the underlined words "by itself."

### Reference by Officer Gutierrez to the Search
### Warrant as Being for Appellant's Person

Out of the presence of the jury, the court told the prosecutor to warn Officer Gutierrez that he should not refer to the search warrant *for appellant's person.* Nonetheless, Gutierrez thereafter testified in response to a question from the prosecutor: ". . . I inquired as to his identity and I asked him if his name was Rudy Glass and he said it was. I then told him I had a search warrant for the premises and *for his person."* (Italics added.) Appellant thereupon, out of the presence of the jury, moved for a mistrial based on Officer Gutierrez' reference to the warrant for appellant's person, arguing that the statement was prejudicial in that it created an inference that Gutierrez had some prior information about appellant connecting him with other criminal activity. The following exchange then took place:

"THE COURT: Did you instruct this witness not to give that testimony.

"MR. VAN METER: I instructed him not to—.

"THE COURT: Did you tell him he had a search warrant for Rudy, that is what we discussed.

"MR. VAN METER: I instructed him not to mention any discussion about asking for Rudy and, is Rudy in there, and the response from the witness or the other party, Delores Shrout.

"THE COURT: Did not get the other part? . . . It is not, as I recall it, it is not in accordance with my instructions to counsel. . . ."

Thus, the court acknowledged that the prosecutor had not followed the court's instructions. The motion was denied and the admonition was given to the jury limiting the effect to be given to such evidence.

The reference by Officer Gutierrez was serious error, in light of the closeness of the case, and should not have occurred. (*People* v. *Bentley* (1955) 131 Cal.App.2d 687, 690 [281 P.2d 1], overruled on other grounds in *People* v. *White* (1958) 50 Cal.2d 428, 430-431 [325 P.2d 985]; *People* v. *Schiers* (1971) 19 Cal.App.3d 102, 112-113 [96 Cal.Rptr. 330]; *People* v. *Cabrellis* (1967) 251 Cal.App.2d 681, 688 [59 Cal.Rptr. 795]; *People* v. *Baker* (1956) 147 Cal.App.2d 319, 323-325 [305 P.2d 97].) The conduct of

counsel in not specifically and carefully following the court's instructions to properly advise the witness is inexcusable.

However, in view of the reversal of the judgment on other grounds, it is unnecessary to decide if the error would justify a reversal in and of itself.

The judgment is reversed.

Gargano, J., and Franson, J., concurred.