[Crim. No. 7322.   Second Dist., Div. Two.   Nov. 15, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK
TELESFORO HERNANDEZ, Defendant and Appellant.

Frank Telesforo Hernandez, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Appellant Hernandez and one William Juan Espinosa were charged in an amended information with violation of section 11501, Health and Safety Code, in that they did on January 26, 1960, "offer to sell, furnish and give away a narcotic, to wit, heroin." Espinosa entered a plea of guilty at the beginning of the trial in the superior court and as a witness attempted to exonerate Hernandez, testifying that he himself had agreed to sell State Narcotics Agent Pulliam some narcotics and that he was arrested while counting the money Pulliam had paid him for the same; that Hernandez had nothing to do with it. Hernandez was convicted nevertheless and, though represented by counsel at the trial, appears here in propria persona.

On the strength of Espinosa's testimony and his own denials appellant claims insufficiency of the evidence. But the testimony of Paul E. Pulliam, an undercover state narcotics agent, shows that appellant was taken in *flagrante delicto.* That testimony, which needed no corroboration (*People* v. *Casado,* 181 Cal.App.2d 4, 8 [4 Cal.Rptr. 851]; *People* v. *Regalado,* 193 Cal.App.2d 437, 442-443 [14 Cal.Rptr. 217]), is ample to support the conviction when viewed, as it must be, in the light most favorable to respondent. (*People* v. *Frankfort,* 114 Cal.App.2d 680, 689 [251 P.2d 401].) It tells the following story.

On January 26, 1960, at 6:55 p. m. Agent Pulliam parked his automobile across the street from No. 4248 East Michigan Street in Los Angeles. Soon a Chevrolet Impala driven by defendant Hernandez, with Espinosa seated on the right, arrived and parked in front of the house numbered 4248. Espinosa went to the porch and sat down. Hernandez crossed the street and had a conversation with Pulliam. Its background, brought out on cross-examination by Hernandez' attorney, was that said defendant had sold a narcotic to Pulliam on the 24th and after consummating the sale had asked where Pulliam was going; told San Francisco, Hernandez said, "If I had known you were coming this far, I would have had four or five for you to take back with you on credit"; he also said he would have narcotics available when Pulliam returned from San Francisco; "would have four on credit for me and sell me two." So on the 26th when defendant approached Pulliam in the car he asked where he was from and Pulliam said San Francisco; also that he would like to buy two pieces (meaning ounces according to the familiar jargon) and get

four on credit. Defendant said he could get hold of only four pieces that night and would sell him two and give him two on credit. "You come all the way down here from San Francisco?" "Yes." "You drive all the way?" "Yes." "Well, look, the next time you want to score, why don't you call me and I'll have it delivered to you." "Well, that's a pretty good idea." "Just a minute. I only have three ounces with me. I'm going to have to go get the other one." Hernandez then went to the porch where Espinosa was seated, the two of them walked back to the Impala and drove away. In about a half hour they returned with Hernandez driving and Espinosa in the rear. Espinosa went to the front porch and Hernandez to Pulliam's car and asked, "How much money do you have?" Pulliam said, "Five hundred fifty dollars," and "Have you got the stuff?"; appellant said, "Yes, I've got it. The man up there on the porch will give it to you. You might as well talk to him because he is going to deliver to you in San Francisco. I will have him deliver it to you up there." Hernandez then went to the porch and Espinosa came to the Pulliam car, asked for the money and said he wanted to count it. Pulliam handed him $550 and at his direction drove to the 4300 block on East Michigan where he parked; on the way Espinosa was counting the money. Before he had finished Agent Byram and Police Lieutenant Kennedy appeared and placed Espinosa under arrest. As they arrived he threw the money down on his left hand side in the front seat and Agent Byram recovered it there. About the same time, Agent Hollingsworth arrested Hernandez in front of the house. In a conversation with Pulliam in the presence of Hollingsworth appellant said he recalled making a deal with Pulliam earlier in the evening; that he was going to sell Pulliam two pieces and he was to get two on credit. "Whose stuff was it?" "It was my stuff. . . . I told Willie to give it to you." "What did you do it for?" "I needed the money. I was only doing this for my wife."

Defendant's own testimony denied the essential features of the Pulliam version of the transaction. His claim that his testimony should have been accepted in preference to that of the state agent falls flat when considered in the light of his former convictions of felonies and their impeaching effect. (Code Civ. Proc., § 2051.) He was charged with, and as a witness admitted, having been convicted of violation of section 503, Vehicle Code (unauthorized taking or stealing

of an automobile), grand theft, rape, robbery and burglary.[1] He also said that there were three robberies.

■ Taken as he was in the commission of the crime charged, appellant's claim of insufficiency of the evidence falls of its own weight. But his real argument is that a showing of a valid arrest was essential to proof of corpus delicti. In this respect he would misapply cases dealing with wrongful search and seizure; there is no such issue in this case; when the narcotic found on Espinosa was offered in evidence his counsel objected on the sole ground of entrapment and there was no objection by Hernandez' attorney. As shown above the officers had ample basis for appellant's arrest. It is settled that the lawfulness of the arrest has no bearing upon the merits of the charge against a defendant (*People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633]; *People* v. *Combes,* 56 Cal. 2d 135, 146 [14 Cal.Rptr. 4, 363 P.2d 4]; *People* v. *Stice,* 165 Cal.App.2d 287, 290 [331 P.2d 468]; *People* v. *Stoliker,* 192 Cal.App.2d 263, 267 [13 Cal.Rptr. 437]), and of course does not preclude prosecution.

■ Appellant asserts that the municipal court lost jurisdiction of the case when the judge of division 44 transferred it to division 40, the master calendar. It appears that the preliminary hearing came on before the judge of department 44 on February 8, 1960, and thereupon appellant's co-defendant expressed a desire to change attorneys because "He won't let me plea. . . . I want to plea. I'm guilty of a crime." The prosecutor objected to proceeding while Espinosa was in the process of changing attorneys. The court said that all pleas were taken in department 40, the master calendar, and so transferred "the case back to 40 for further disposition at this time," saying further that "if Division 40 returns it to this Court, we will proceed with the preliminary examination." This was done at 2:25 p. m., and at 2:35 p. m. the case was back in department 44, presumably having been regularly retransferred. Mr. Brown, Deputy District Attorney, advised the court as follows: "Your Honor, at this juncture may the record show that this case was called in Department 44; that it was transferred to Department 40 and that there the Defendant Espinoza stated that he wished to retain the public defender as his counsel and that the case was transferred back to this department? THE COURT: Well,

[1]The court made no finding upon the truth of the allegations of the information charging priors.

I assume so, Counsel, because the public defender is here representing him and announced ready." Appellant's counsel announced "ready" and the trial proceeded without any objection being voiced by appellant. There was nothing irregular in this; no evidence had been taken before these transfers were made and the court's action was nothing but the normal functioning of a court of numerous departments (Gov. Code, § 72274). In no sense is there a jurisdictional question involved.

Appellant was represented by counsel at the trial and immediately after waiver of jury trial counsel for both sides stipulated that "The Court may read and consider the transcript of the testimony taken at the preliminary hearing, examination of this case which resulted in the filing of information No. 224,731, with the same force and effect as if the witnesses therein were personally present in court called, sworn and testified under oath accordingly; . . . and both parties reserve the right to put on any additional evidence to supplement the preliminary transcript." Appellant was present at the time and said nothing. The judge made no remark when the stipulation was stated into the record. The trial was then continued to a later date and when it was reached the trial judge said: "This matter having heretofore been submitted and pursuant to stipulation I have read the transcript." The trial then proceeded upon that basis without any objection from anyone. Appellant now says the consideration of this transcript was grievous error because of failure to show as a foundational fact absence from the jurisdiction of the witnesses or the like, citing section 686 Penal Code, pertaining to the use of the testimony of one who has been examined at the preliminary.

Manifestly the foundational showing therein prescribed is a right which can be waived by defendant through his counsel and was waived by the making of the stipulation in question. (*People* v. *Wallin,* 34 Cal.2d 777, 781-782 [215 P.2d 1]; *People* v. *Comstock,* 147 Cal.App.2d 287, 299 [305 P.2d 228]; *People* v. *Smyer,* 177 Cal.App.2d 477, 478 [2 Cal.Rptr. 215]; *People* v. *Brown,* 145 Cal.App.2d 778, 780-781 [303 P.2d 68]; *People* v. *Barry,* 153 Cal.App.2d 193, 204 [314 P.2d 531]; *People* v. *Anderson,* 126 Cal.App.2d 702, 705 [272 P.2d 805].)

The "assent of the court to agreements of counsel, affecting the proceedings, is assumed until its dissent therefrom is indicated." (*McLeod* v. *Hyman,* 272 Pa. 582 [116 A. 535, 536].) Such assent was affirmatively evidenced here

by the court's acceptance and reading of the preliminary transcript, his recording that fact in the record and basing his ruling primarily upon the evidence found in that transcript.

In arguing that the judgment and "verdict" are contrary to the law and evidence appellant challenges the right of the court to permit an amendment of the information. The contention is groundless. The original information charged defendants with selling, furnishing and giving away a narcotic, and defendants were held to answer on that charge. On March 14, 1960, the superior court granted the People's motion for leave to amend the information by adding the words "offer to sell" and an amended information was filed accordingly. When the cause was called for trial on April 20 appellant stated in open court that he understood he was "charged with the crime of offering to sell, furnish and give away a narcotic, to-wit, heroin." On April 27 the trial upon this charge proceeded without any objection.

Section 1009, Penal Code provides that leave may be granted to amend an information to charge any offense "shown by the evidence taken at the preliminary examination." This may be done in the discretion of the court at any time during the trial provided defendant's substantial rights are not prejudiced. (*People* v. *Stoddard,* 85 Cal.App.2d 130, 138 [192 P.2d 472] ;[2] *People* v. *Milligan,* 77 Cal.App. 745, 748 [247 P. 580] ; *People* v. *Huerta,* 148 Cal.App.2d 272, 275 [306 P.2d 505] ; *People* v. *Agnew,* 77 Cal.App.2d 748, 757 [176 P.2d 724] ; Fricke on Criminal Procedure, Fifth Edition, pp. 151, 153.) Moreover, a defendant cannot complain on appeal of an amendment that was made without objection on his part (*People* v. *White,* 47 Cal.App. 400, 403 [190 P. 821] ).

The amendment seems to have been made upon the theory that the evidence at the preliminary hearing showed only an offer to sell narcotics. Certainly its allowance could not prejudice defendant for the evidence at that hearing was sufficient to sustain the charge of making a sale. The above summary of evidence is based upon that transcript. The term "sale" is defined in section 11008, Health and Safety Code, as follows : " 'Sale,' as used in this division, includes barter, exchange, or gift, or offer thereof, and each such transaction

---

[2]Reference is made in this case to Penal Code § 1008; the subject matter was transferred in 1951 to § 1009.

made by any person, whether as principal, proprietor, agent, servant, or employee.'' That section and 11501 are both in division 10 of the code. Hence proof that shows a mere offer proves a sale within the purview of the code (17 Cal.Jur.2d § 36, p. 36). Moreover, the preliminary proof showed unmistakably that appellant was an aider and abettor in making the sale even if it be conceded, as Espinosa testified at the trial, that he made it himself. (See *People* v. *Shephard,* 175 Cal.App.2d 297, 302 [345 P.2d 956].) No amendment to the information was actually necessary and hence there was no possible prejudice to appellant through its allowance.

Bound up in this argument concerning amendment of the information is the claim that defendant's motion to set aside the information under section 995, Penal Code should have been granted and hence he was not lawfully committed for trial. That this is devoid of merit appears from the summary of evidence hereinbefore set forth.

■ Finally it is said that the ''verdict'' and judgment are vague, uncertain and void, in that they do not specify which element of the charge—offer to sell, offer to furnish or offer to give away—is the basis of the conviction. The trial judge said, ''I find the Defendant Hernandez guilty,'' and the judgment states that defendant had ''been duly found guilty in this court of the crime of VIOLATION OF SECTION 11501, Health and Safety Code, a felony, as charged in the amended information.'' This is sufficient. (See Pen. Code, §§ 1151, 1207.) The information properly may state the charge in the language of the statute and the judgment may be in the same form. (See *In re Basuino,* 22 Cal.2d 247, 251-252 [138 P.2d 297]; *In re Bramble,* 31 Cal.2d 43, 50 [187 P.2d 411]; 29 Cal.Jur.2d § 390, p. 406.)

■ Appellant's notice of appeal purports to take an appeal to the superior court. As the District Court of Appeal is the tribunal to which the appeal comes under the Constitution (3 Cal.Jur.2d § 27, p. 430), the misnomer in the notice is to be disregarded and the appeal recognized as taken to the proper court. (*Rabe* v. *Lloyd,* 187 Cal. 282 [201 P. 598].) Appellant's attempt to appeal from the judgment and ''sentence,'' which are one, amounts to an appeal from the judgment (*People* v. *Sweeney,* 55 Cal.2d 27, 33, footnote 1 [9 Cal.Rptr. 793, 357 P.2d 1049]). Appellant's brief assumes that he has also appealed from the order denying his motion for new trial but he did not do so.

There is no merit whatever in this appeal. The term "recidivist" describes appellant too politely. He is a confirmed and vicious predatory animal. Unfortunately the habitual criminal law (Pen. Code, § 644) does not quite reach him for, since 1945 its application does not extend to a person found guilty of "any felony" but is limited to those who are convicted of certain specified offenses, and narcotics violations are not included in the list.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 29, 1961.