[Crim. Nos. 7997, 7998. Second Dist., Div. Two. Dec. 27, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT J. SHERMAN, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v. CHARLES T. FREEMAN, Defendant and Appellant.

(Consolidated Cases.)

Charles T. Freeman, in pro. per., and Richard B. Cutler, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Louis L. Selby, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Appellants Sherman and Freeman were tried and convicted in the superior court of Los Angeles County of various violations of the narcotics laws, i.e., sale of marijuana (Health & Saf. Code, § 11531), or sale of heroin (Health & Saf. Code, § 11501). Also named as defendants were Oliver Montgomery, Benjamin F. Kindle and Doris Lewis. The defendants were grouped according to the allegations of the separate counts of the indictment. Appellant Sherman was charged in count III jointly with John Doe No. 25, who proved to be Montgomery; in count V with Kindle (John Doe Butch), and count XI with Doris Lewis; in counts I, II and IV Sherman was charged alone. The trial was severed for hearing according to groupings of charges. That of Sherman and Montgomery (count III) was heard first without a jury. It resulted in conviction of appellant Sherman and acquittal of Montgomery.

### Sherman Appeal

Appellant Sherman asserts error in the court's amending count III of the indictment upon its own motion, substituting the date December 23, 1960, for November 23, 1960, the one alleged in the indictment. Recognizing that "mere change in the date on which the crime is alleged to have been committed will not encompass a requirement of additional time in which to prepare a defense unless the defendant was actually misled or otherwise prejudiced by such change" (*In re Newbern,* 53 Cal.2d 786, 790 [3 Cal.Rptr. 364, 350 P.2d 116]), counsel for appellant argues that the amendment at bar "does not

appear to be within the category of 'mere' changes referred to in the *Newbern* case''; also that ''[t]he case at bar presents a different consideration—one which clearly changes the offense charged and thus falls within the prohibition of Penal Code Section 1009, more so when it is a Grand Jury indictment which is being amended.'' The point cannot be sustained.

It is doubtful whether the amendment now under discussion was necessary.

Section 955, Penal Code, says: ''The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense.'' It is settled law that ''[v]ariation from the allegations of an information within the period of limitations is not fatal except where it appears that commission of the act charged does not constitute a crime unless committed on a specific date. [Citations.]'' (*People* v. *Murray,* 91 Cal.App.2d 253, 257 [204 P.2d 624].) To the same effect see *People* v. *Triplett,* 70 Cal.App.2d 534, 541 [161 P.2d 397]; *People* v. *Crosby,* 58 Cal.2d 713, 725 [25 Cal.Rptr. 847, 375 P.2d 839].

But if an amendment were necessary, application of section 1009, Penal Code, would preclude a finding of error.

If the district attorney were so disposed he could have amended the complaint at that stage of the case, before plea, because mere change in the date of the alleged offense does not ''change the offense charged'' and hence is permitted by section 1009. (*People* v. *Crosby, supra,* 58 Cal.2d 713, 721, 724.) But the amendment in this case was made on the judge's own motion.

*People* v. *Hernandez,* 197 Cal.App.2d 25, 31 [17 Cal.Rptr. 20]: ''Section 1009, Penal Code provides that leave may be granted to amend an information to charge any offense 'shown by the evidence taken at the preliminary examination.' This may be done in the discretion of the court at any time during the trial provided defendant's substantial rights are not prejudiced. (*People* v. *Stoddard,* 85 Cal.App.2d 130, 138 [192 P.2d 472];[2] *People* v. *Milligan,* 77 Cal.App. 745, 748 [247 P. 580]; *People* v. *Huerta,* 148 Cal.App.2d 272, 275 [306 P.2d 505]; *People* v. *Agnew,* 77 Cal.App.2d 748, 757 [176 P.2d 724]; Fricke on Criminal Procedure, Fifth Edition, pp. 151, 153.) Moreover, a defendant cannot complain on appeal of an amendment that was made without objection on his part (*People* v. *White,* 47 Cal.App. 400, 403 [190 P. 821]).'' The footnote 2 reads: ''Reference is made in this case to

Penal Code § 1008; the subject matter was transferred in 1951 to § 1009.''

*People* v. *O'Hara,* 184 Cal.App.2d 798, 811 [8 Cal.Rptr. 114] : ''In *People* v. *Walker,* 170 Cal.App.2d 159 [338 P.2d 536], an information which alleged unlawful 'possession' of heroin was amended by interlineation, at the trial, to allege unlawful 'sale' of heroin. The defendant therein did not object to the amendment, and stated that he would not object thereto. In that case the defendant was not arraigned on the amended information and did not plead thereto. It was said therein (p. 164) : ' [W]here an amended pleading is filed by the district attorney in open court pursuant to statute, and the accused . . . offers no objection, makes no motion for continuance, and nothing is called to the court's attention to show that by making such amendment the substantial rights or any rights of the defendant are prejudiced, he may not for the first time raise the point on appeal. . . .' ''

*People* v. *Vance,* 138 Cal.App.2d 871, 874 [292 P.2d 552] : ''Furthermore, no objection was made to the amendment, but appellant entered a plea of not guilty to the amended information and acquiesced in the course pursued; under such circumstances claim of error is waived and cannot be urged for the first time on appeal. (*People* v. *Beck,* 71 Cal.App.2d 637 [163 P.2d 41].) '' There was no objection to the amendment when made in the case before us.

Officer Jones testified to the pertinent transaction as having occurred on December 23, 1960. Counsel for codefendant Montgomery objected to any testimony concerning said date and moved to strike that which was already in the record. Defendant Sherman, who was appearing in propria persona, made the same objection and motion. The court inquired whether a continuance was needed ''to prepare because of this variance in dates'' and the attorney for Montgomery answered in the negative; appellant Sherman gave no sign of any desire for a continuance. When the court on the following day announced that he was ordering count III of the indictment amended to change the date, he inquired of Montgomery's counsel and of Sherman whether they felt the amendment required a continuance, and each of them replied in the negative. Appellant was rearraigned and pleaded not guilty to the third count, as amended, and the trial proceeded without objection to the amendment or the immediate resumption of the hearing.

Appellant Sherman rested without producing any evidence

but did testify on behalf of his codefendant that he did not see him on December 23d but did see Officer Jones on that date; that he talked to Stanley, not Montgomery, in the area of the Avalon Liquor Store on that day and was present when the officer handed someone a five-dollar bill on December 23d, but it was not handed to Montgomery. ▉ As a witness, appellant showed no uncertainty about the December 23d date, from which it follows that there manifestly was no prejudice suffered by him from the amendment of the indictment.

Appellant's second contention is that the court abused its discretion and denied appellant's constitutional rights in permitting him to discharge the public defender as his attorney and to conduct the trial on his own behalf. It is said in argument that he relied upon entrapment as a defense and the judge failed to ascertain whether he, a layman, was competent to present such a complicated issue.

▉ This motion to substitute appellant for the public defender was made on March 16, 1961. Appellant had not yet entered his plea and that matter had been continued to March 16. Apparently a motion to dismiss under section 995, Penal Code, was made on that date and continued to March 27th and then to March 30th, on which date the appellant in propria persona presented his motion under section 995, same being granted in part and denied in part. On that same day, and not before, he entered his plea of not guilty. This was 14 days after the public defender was relieved of responsibility in the case. ▉▉ Assuming that the plea of not guilty was broad enough to include entrapment (Pen. Code, §§ 1019 and 1020), it certainly does not suggest it, for "entrapment presupposes the commission of the crime alleged and one who denies commission of the crime cannot be heard to say that he was entrapped into doing it after it is proved on him. (*People* v. *Johnson*, 99 Cal.App.2d 559, 562 [222 P.2d 58]; *People* v. *Tillman*, 142 Cal.App.2d 404, 407 [298 P.2d 631]; Fricke on California Criminal Law (7th ed.), p. 38.)" (*People* v. *Polsalski*, 181 Cal.App.2d 795, 801 [5 Cal.Rptr. 762].) See also *People* v. *Jones*, 176 Cal.App.2d 743, 749 [1 Cal.Rptr. 637]; *People* v. *Lollis*, 177 Cal.App.2d 665, 670 [2 Cal.Rptr. 420].

▉ Clearly, the court's duty, if any, to probe into defendant's ability to handle a defense of entrapment, had not arisen at the time he permitted defendant to take over his own defense. Defendant was then in the same position (so

far as this matter is concerned) as if he had never been represented by a lawyer. *People* v. *Mattson,* 51 Cal.2d 777, 788 [336 P.2d 937] : " 'In a criminal action the defendant is entitled: . . . 2. To be allowed counsel as in civil actions, or to appear and defend in person and with counsel.' (Pen. Code, § 686.)

"The foregoing sections accord the accused not only a right to counsel but also a right to represent himself if he so elects. Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney. [Citations.]" ▮ At page 794: "[T]he defendant during the proceedings before the magistrate and the trial court has as a matter of absolute right but two choices in the matter of a court-appointed attorney: he can accept representation by counsel (as most defendants with the ability to employ counsel have the good sense to do) or he can elect to represent himself. If he makes the latter election, he assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken; he is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented by counsel."

We do not consider the cited case of *People* v. *Shroyer,* 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460] (no petition for hearing in Supreme Court filed), to be authority requiring the trial judge to make the suggested inquiry at the initial stages of the ordinary case wherein there has been nothing to suggest defendant's lack of competence to represent himself.

▮ That the rules stated in that case do not apply to a situation such as the one here presented appears from *People* v. *Thomas,* 58 Cal.2d 121, 131-132 [23 Cal.Rptr. 161, 373 P.2d 97], wherein the court said: " 'A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance. [Citations.] When petitioner stated at the time of his arraignment that he did not need an attorney, the court was justified in taking him at his word [citations]. His attitude, both at that time and at the commencement of the trial, was equivalent to a final declination of counsel. . . .' (*In re Connor,* 16 Cal.2d 701, 709 [108 P.2d 10].)"

*People* v. *Harmon,* 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329] : " 'Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney.' [Citations.] When defendant in this court requested termination of the appointment of his counsel we were 'not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer' [citation] and, having competently elected to represent himself, defendant 'assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken' [citation]." See also *People* v. *Linden,* 52 Cal.2d 1, 18 [338 P.2d 397] ; *People* v. *Green,* 191 Cal.App.2d 280, 284-285 [12 Cal. Rptr. 591].

The burden rests upon the appellant to establish, when the point is raised first on appeal, that he did not competently and intelligently waive his right to counsel. (*People* v. *Feeley,* 179 Cal.App.2d 100, 106 [3 Cal.Rptr. 529] ; *Moore* v. *Michigan,* 355 U.S. 155, 161-162 [78 S.Ct. 191, 2 L.Ed.2d 167].) Appellant Sherman has attempted no such proof here.

Moreover, the matter lies within the discretion of the court, as is shown by the foregoing authorities, and if error was committed it must have resulted in prejudice to defendant or the judgment will not be reversed on that ground.

Appellant herein had been previously convicted of two felonies and had served terms of imprisonment for same,— robbery in the District of Columbia and violation of section 11500, Health and Safety Code in Los Angeles. Through these experiences he had gained some familiarity with criminal court procedure. In the trial of counts I, II and IV, appellant during his cross-examination of Officer Jones brought up the matter of entrapment, saying: "I would like to interject a little something right here—some quotations of *People* versus *Jugg* [*Judd*], 170 Cal.App.2d [212] 217 [338 P.2d 458] Criminal Law of Defense—Entrapment. Now, we will endeavor to define it: 'If the conception and planning of an offense by an officer and his procurement in a commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer.' " (A slightly inaccurate quotation from page 216 of 170 Cal.App.2d.) From this it would seem that he understood the gist of entrapment. Incidentally, the subject was immediately abandoned. Appellant cross-examined other witnesses, objected to introduction

of certain evidence, objected to a variance between the allegation of November 23 and the proof of December 23, presented a motion to dismiss under section 995 and prevailed upon the court to grant it as to counts VI, VII, VIII, IX and X. He obtained acquittal on two counts out of six and procured a new trial on another one.

We cannot say that there was any error or abuse of discretion in this matter of permitting appellant to take over the trial of the case in propria persona.

The judgments of conviction of appellant Sherman upon counts I, II and III of the indictment, as amended, are affirmed.

### Appeal of Freeman

Appellant Freeman and defendant Kindle were tried jointly upon Count VII of the indictment which alleged that they (John Doe, "Butch" and John Doe, "Chuck") made a sale of marijuana on January 4, 1961. The indictment was amended to show their real names as Benjamin F. Kindle and Charles T. Freeman, respectively. They waived jury trial and both were convicted. Freeman was represented by attorney Earl C. Broady, pursuant to court appointment, and Kindle by Deputy Public Defender Charles D. Boags. The indictment was also amended to charge Freeman with prior conviction of robbery on or about June 5, 1956, and he admitted the fact. He now appeals from the judgment in propria persona.

Though his brief is somewhat obscure in its presentation, the points directly raised are that (1) the evidence is insufficient to identify him as the seller of the marijuana, (2) the evidence also is insufficient to show that a paper bag which was delivered to Officer Johnson contained marijuana, (3) it was prejudicial error to receive in evidence an "out of court" statement of his codefendant, and (4) that "counsel, appointed by the court to *re*present the defendant, grossly mis*repre*sented same, in that he totally *dis*carded certain facts known and, or, available to him which not only could have proved perjury on the part of people's one and only witness, but could also have proven the defendant to be the victim of *mis*taken identity." We find no merit in any of these contentions.

The first two points march hand in hand and proceed upon basic misconceptions, namely, that the court of review should and does weigh the evidence, and that testimony which is damaging to appellant may be branded as incredible upon

the basis of inconsistencies within it, or improbabilities which appear when weighed with that opposed to it. Pertinent is the following language of *People* v. *Simpson,* 43 Cal.2d 553, 562-563 [275 P.2d 31] : ''[T]he rule is well settled that to warrant the rejection of the statements given by a witness who has been believed by a jury, or trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions [citation], and it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends [citation]. Although the facts disclosed by the testimony given by Jimmie certainly disclose 'unusual circumstances' [citation], it cannot be said that it was a physical impossibility for such facts to be true.''

 An appellate court is bound by the evidence favorable to respondent, as explained in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]. It is there said, in part: '' 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.'' Upon that basis we find the following factual situation.

 Officer James C. Johnson, an undercover operative of the Los Angeles Police Department, arrived at Kindle's house shortly after 10 or 10:30 a. m. on January 4, 1961. He had talked to Kindle on the previous day and was told that Kindle could get him ''half a can'' (meaning marijuana) for five dollars, and that he should stop by on the 4th. On that day Johnson arrived alone, Kindle joined him and they drove in Johnson's car to 52d and Hoover where Johnson handed him a five-dollar bill. Kindle alighted from the car, walked between some courts and returned in about five minutes telling the officer that Freeman's wife said: ''He is down at his stash'' (which statement was received as to Kindle only). Kindle directed Johnson to 66th and Denver Streets, parked at the curb and sounded the car horn three times. Soon appellant Freeman came from the rear of 6532 Denver Street and got into a gray or blue Chrysler sedan, backed to the place where Johnson and Kindle were parked. (At that time he

was on parole from a prison sentence for armed robbery and was not permitted to drive.) Kindle inquired: "What's happening"; appellant said, "What do you want?"; Johnson: "Half a can." Appellant parked his car at the curb and went to the rear of 6532 Denver Street. Shortly he returned to the passenger side of the Johnson car. Kindle handed him a five dollar bill and received from appellant a paper bundle, appellant saying: "Thanks a lot, man." The bundle was passed by Kindle to the officer and it was later shown by stipulated testimony of a forensic chemist to contain approximately 27 grams of marijuana. When Johnson reached the police building he delivered the paper bundle to the property division, placing on the back of it some red sealing wax with his thumb print in it, also his initials and the date of his receipt of it, January 4, 1961. Before leaving it with the property division, Johnson placed the paper bundle inside a large envelope which he also initialed and sealed with sealing wax in which he had placed two thumb prints. It was carefully preserved in the property division of the police department until its production at the trial.

Later in January Johnson went to appellant's home and asked: "What's happening, Chuck?" "Got any weed?" and Freeman said: "No, I don't have any now; come back later on tonight, I should have some." The officer did not return. On another occasion he saw appellant working on the Chrysler automobile he was driving on January 4th; it was not registered in appellant's name.

Officer Johnson gave appellant's description and address to other officers who arrested him on February 17 or 18; while appellant was in the police car and Johnson in another car parked behind it, Johnson saw him and told the other officers: "He is the one."

Defendant on the witness stand denied most of the testimony against him, resorting in most instances to small alibis and the claim of perjury on the part of Officer Johnson. This testimony the trial judge rejected, for ample reasons. Among other things appellant, previously convicted of a felony, was to be discounted as a witness by that fact alone. There is no room for doubt of the sufficiency of the evidence to support the implied finding that appellant was the vendor of the marijuana on the occasion in question. Nor is there any substantial basis for our rejection of Johnson's testimony in the face of the trial judge's finding that it was true.

 Likewise, the tracing of the carefully identified

and preserved marijuana in the paper sack was complete, leaving no escape from the conclusion that the sack contained marijuana when handed to Officer Johnson by Kindle after receiving it from appellant, and that the same sack with the same contents was produced and identified in court at the trial. There was no evidence to show or to warrant an inference that there had been any alteration of the evidence, or any tampering with it. (See, *People* v. *Riser,* 47 Cal.2d 566, 580-581 [305 P.2d 1].)

Complaint of the court's receiving a statement of codefendant Kindle made out of court is based upon Johnson's testimony that on January 4 Kindle, after walking between some courts at 52d and Hoover to appellant's residence, returned and said that "his wife said, 'He is down at his stash.' '' Freeman's attorney objected while the witness was answering the question and upon the ground of hearsay. The court said: ''This is being received only as to the defendant Kindle. You represent the defendant Freeman.'' There was no jury and it is to be presumed that the judge did not consider this bit of testimony as a part of the proof against appellant. There was no error here. If the court had erred in this respect it would have been of little consequence in the light of the other evidence. (See, McCormick on Evidence, § 60, p. 137; 5 C.J.S. § 1564 (5), p. 1268.)

The claimed misrepresentation of counsel who was acting under court appointment in the defense of Freeman finds no substantial support in the record. Disagreements between attorney and client as to the proper conduct of the trial—what objections or motions should be made, what evidence should be offered or withheld—are of frequent occurrence and lead often to severance of the relationship. *Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler,* 12 Cal.2d 98, 105 [81 P.2d 913] : "It is common experience that attorneys and their clients frequently differ and even violently disagree between or among themselves with reference to the conduct or the procedure which should relate to the trial of the action. However, it is well established law that the attorney has complete charge and supervision of the procedure that is to be adopted and pursued in the trial of an action; and in accordance with that law, if Eversole [the attorney] wished to have a jury trial he had a right to insist that the trial be so conducted. . . . And again in the case entitled *Union Central Life Ins. Co.* v. *Anderson,* 291 Ill.App. 423 [10 N.E.2d 46, 52], the court said, 'When one puts his case in the hands of an attorney, it is a

reasonable presumption that the authority conferred includes such actions as the attorney, in his superior knowledge of the law, may decide to be legal, proper, or necessary in the prosecution of the suit. . . . Attorneys may . . . of necessity make disposition of many things that arise in and about the trial of cases.' '' At page 106: '' 'When one hires an attorney to represent him in litigation, that attorney has full charge of the case as far as procedure and remedy are concerned. He is trained and skilled in the law. A client has no knowledge of procedure and intrusts this to the attorney he employs. In 2 Ruling Case Law, section 63, page 986, we find the following: ''An attorney of record, by virtue of his employment as such, subject to the approval of the court, has implied authority to do all acts necessary and proper to the regular and orderly conduct of the case, and affecting the remedy only and not the cause of action, and such acts, in the absence of fraud, will be binding on the client, though done without consulting him, *and even against his wishes.''* (Italics added.)' '' See also, *Duffy* v. *Griffith Co.,* 206 Cal.App.2d 780, 789 et seq. [24 Cal.Rptr. 161].

It is a matter of common knowledge possessed by experienced trial lawyers that the advocate who yields to the hurried whispered suggestions of his client to put to the opponent some supposedly withering and devastating questions, stumbles into egregious error more often than not. The claim at bar that the ''use of facts'' which appellant wanted counsel to bring out ''would have proved perjury on the part of the people's one and only witness'' and also ''have proven the defendant to be the victim of mistaken identity'' reflects a layman's appraisal of an expert's judgment and strategy in a crucial phase of the case; his judgment must yield to that of the expert. Mere refusal or failure of the lawyer to follow the client's advice as to the conduct of the case does not spell inadequate representation. Moreover, appellant made no complaint in the trial court of the manner in which he was being represented.

*People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865], is in point: 'Moreover, even if there had been any incompetency on the part of defense counsel, it is questionable whether defendant in the instant case could complain on appeal. A defendant may complain at any time during the trial that his counsel is not adequately representing him thereby affording the trial court an opportunity to correct the situation, but if a defendant fails to avail himself of this

privilege at the trial level, he cannot ordinarily after an adverse judgment, first complain of the matter on appeal. (*People* v. *Prado*, 190 Cal.App.2d 374, 377 [12 Cal.Rptr. 141]; *People* v. *Comstock*, 147 Cal.App.2d 287, 299 [305 P.2d 228]; *People* v. *Hood*, 141 Cal.App.2d 585, 589-590 [297 P.2d 52].)''

*People* v. *Ford*, 200 Cal.App.2d 905, 913-914 [19 Cal.Rptr. 758]: ''Inadequacy of representation by counsel will not in every case be declared to violate the constitutional right of the accused to appear and defend by counsel and thus contravene due process. ▮▮▮ 'The handling of the defense by counsel of the accused's own choice will not be declared inadequate except in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a ''farce or a sham.'' [Citations.]' (*People* v. *Wein*, 50 Cal.2d 383, 410 [326 P.2d 457]; see also *People* v. *Redden*, 187 Cal.App.2d 275, 279 [9 Cal.Rptr. 368].) We feel that the above test of the inadequacy of counsel applies to counsel appointed for the accused as well as to counsel of the accused's own choice. ▮▮▮ When the accused claims that his constitutional right has thus been violated, the burden of sustaining such charge is upon him. (*People* v. *Robillard*, 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295].) The defendants have failed to make any such showing. They have contented themselves with bare assertions of inadequacy. . . . Even if we assumed that defense counsel should have subpoenaed Leighton while the latter was still available, such failure in our opinion represents only a mistake of judgment which did not 'destroy the integrity of the proceedings as a trial' and therefore would not constitute a denial of due process.'' See also, *People* v. *Mattson*, 51 Cal.2d 777, 787, footnote 2 [336 P.2d 937]; *People* v. *Lindsey*, 56 Cal.2d 324, 328 [14 Cal.Rptr. 678, 363 P.2d 910]; *People* v. *Hughes*, 57 Cal.2d 89, 98-99 [17 Cal. Rptr. 617, 367 P.2d 33]; *People* v. *Downer*, 57 Cal.2d 800, 813 [22 Cal.Rptr. 347, 372 P.2d 107].

Appellant makes numerous other subsidiary points such as claims that he was convicted on hearsay, that the indictment showed commission of no public offense, that the narcotic was not shown to have come directly or indirectly from him; none of these claims is sound and none requires further comment.

There was no miscarriage of justice here.

Judgment affirmed as to defendant Freeman.

Fox, P. J., and Herndon, J., concurred.