STATE OF NEW JERSEY IN THE INTEREST OF R.B.

Superior Court of New Jersey
Appellate Division

Argued March 11, 1985—Decided April 23, 1985.

Before Judges KING, DEIGHAN and BILDER.

*Larry Plummer,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph H. Rodriguez,* Public Defender of New Jersey, attorney; *Bruce J. Kaplan,* Assistant Deputy Public Defender, of counsel and on the brief).

*Gary H. Schlyen,* Senior Assistant Prosecutor, argued the cause for respondent (*Joseph A. Falcone,* Passaic County Prosecutor, attorney).

The opinion of the court was delivered by

KING, P.J.A.D.

The main issue on this appeal is the Confrontation Clause's impact in a nonjury trial on the admissibility and use of inculpatory confessions of non-testifying co-defendants. In this case the juvenile appellant contends that the judge erred in several respects in adjudicating him guilty of delinquency for robbery in the first degree, *N.J.S.A.* 2C:15–1(a). A disposition of an indeterminate three-year maximum custodial term was imposed.

Appellant makes three basic contentions: (1) his Confrontation Clause rights under the State and federal constitutions were violated, (2) the judgment of conviction was not supported by the record, and (3) the charge levelled in the complaint and proved was at best only second-degree robbery and did not support the adjudication of first-degree robbery.

The appellant and his three alleged cohorts (B.P., E.Y. and C.L.) were tried together in the same proceeding; the joinder was over objection of counsel. All were adjudicated delinquent for having committed first-degree robbery.

The robbery of Mrs. Batelli occurred on Mulberry Street in Paterson at about 8:50 on the morning of April 1, 1982. She was attacked and knocked to the ground by a group of juveniles. Three juveniles started pulling on her pocketbook and dragged her through an empty lot. She said there were two additional juveniles in the group, one behind her and one to her left. Mrs. Batelli saw the backs of the people pulling at her purse. She also saw the face of one attacker, B.P. He was preparing to kick her but stopped when someone screamed. She was taken to St. Joseph's Hospital and there recognized B.P. who was being brought into the emergency room by the police officer. When she saw him, she screamed "get him out of here!"

Lucille Gallo was also on Mulberry Street at the time of the attack and heard the victim scream "help me." She saw four of the five youths "around" Mrs. Batelli. They were all clustered about her and seemed to be pulling at her body and her purse. Gallo screamed to leave Mrs. Batelli alone and the youthful assailants quickly ran away.

Detective DeLuccia took a statement from B.P. on April 1 at 1:05 p.m. This statement implicated the other juveniles. He then obtained statements from E.Y., C.R. and appellant R.B. at later dates within the next week.

Before the hearing the State gave notice that it intended to use the juveniles' statements as evidence. *R.* 3:15–2(a); *see State v. Young,* 46 *N.J.* 152 (1965). Motions for severance by defense counsel were denied. Before the hearing the judge examined the statements and found them to be "interlocking" within the meaning of *Parker v. Randolph,* 442 *U.S.* 62, 99 *S.Ct.* 2132, 60 *L.Ed.*2d 713 (1979). The judge specifically found that "all individuals give similar versions of what happened and each individual accounts for the presence of the other three at the scene of this offense."

Motions for mistrial and acquittal were denied after the State's case was presented. These denials reaffirmed the trial judge's belief in the propriety of a joint delinquency hearing under the circumstances. When denying the motions, the judge said: "All of these statements can only be used against the person who gave the statements." All defendants rested without testifying or presenting evidence. When giving judgment, the judge repeated that "the statement of each can only be used in the case of that young man and as the trier of fact that is what the court will do." He also found that the statements all met voluntariness and *Miranda* standards beyond a reasonable doubt.

The appellant urges a reversal because of a violation of his Confrontation Clause right by the conduct of the joint trial in which the statements of his alleged conspirators, all inculpatory as to him, were admitted into evidence when they did not testify and he could not cross-examine them. *See Bruton v. United States,* 391 *U.S.* 123, 137, 88 *S.Ct.* 1620, 1628, 20 *L.Ed.*2d 476 (1968). The State contends that we should follow *Parker v. Randolph, supra,* where a plurality opinion of four justices approved an exception to the *Bruton* rule when the confessions were "interlocking" in nature, each inculpating in turn the declarant defendant and the non-testifying co-defendants. As Judge Dreier observed in *State v. Haskell,* 195 *N.J.Super.* 235,

237 (App.Div.), certif. granted 99 *N.J.* 198 (1984) (argued March 18, 1985), New Jersey's appellate courts have never condoned or adopted the so-called "interlocking confessions" exception of *Parker v. Randolph* as a matter of State constitutional or procedural law. *See R.* 3:15–2(a). The *Parker v. Randolph* limitation on *Bruton* "represents the view of only four members of the [United States Supreme] Court and has been repudiated by four other members of the Court." *LaFave and Israel, Criminal Procedure,* § 17.2 at 363 at n. 29 (1984). "The *Randolph* plurality opinion has been strongly criticized, and rightly so," according to several respected authorities. *Id.* at n. 18. Since *Haskell* has been argued and is awaiting decision, we doubtless will soon know the answer to that question. But we need neither answer nor anticipate the answer to that question in this case.

■ This was a nonjury hearing. The danger sought to be avoided by the *Bruton* rule, jury disregard of instructions, was not present here in the first place. The judge twice carefully observed that the statements of the other three juveniles would not be used against appellant R.B. On our review of the record we are convinced that they were not used by the judge to convict R.B. but only to justify a joint hearing under *R.* 3:15–1(a); *see R.* 5:1–1. We are satisfied that the joint proceeding did not jeopardize appellant's rights under the Confrontation Clause where the trier-of-fact was expressly conscious of the dangers and took care to avoid improper use of the co-conspirator's unsworn and unchallenged extra-judicial statements.

Several California cases and a federal case have approved this practice in nonjury proceedings. *See People v. Talley,* 56 *Cal.Rptr.* 492, 423 *P.*2d 564, 572 (Cal.1967); *People v. Sherman,* 211 Cal.App.2d 419, 27 *Cal.Rptr.* 353, 360 (Ct.App.1962). As the court noted in *United States v. Venere,* 416 *F.*2d 144, 149 (5th Cir.1969), the *Bruton* rule addressed "the inability of

the traditional limiting instructions to assure the differentiation by the jury between the impact of the unsworn statement on the defendant and on the nonconfessing co-defendant." The Fifth Circuit concluded that any danger was "greatly attenuated by the circumstance that a jury was waived." *Ibid. Cf. People v. Cardona,* 56 *A.D.*2d 759, 392 *N.Y.S.*2d 40 (App.Div. 1977) for an example of misuse of a co-defendant's confession by the trial judge which resulted in a reversal.

■ We are satisfied that the evidence of his guilt was sufficient to support the adjudication of delinquency. He admitted his presence at the scene and his flight with his alleged conspirators.[1] This evidence, together with the testimony of Mrs. Batelli and Mrs. Gallo as to the nature of the group's attack on Mrs. Batelli, was sufficient to establish R.B.'s participation in the robbery in concert with the others beyond any reasonable doubt. *State v. Reyes,* 50 *N.J.* 454, 458–459 (1967).

■ Because of some doubt as to whether the complaint sufficiently specified or the evidence established a charge of the first degree, we modify the disposition to one of an adjudication of delinquency for robbery in the second degree. *See N.J.S.A.* 2C:15–1(a) and (b); *R.* 2:10–5. There was no proof of use of a weapon or infliction of serious bodily injury. The disposition is amended to reflect an adjudication of guilt of second-degree robbery.

As modified, the judgment is affirmed.

---

[1] Q.R., tell me in your own words about what happened before, during and after the purse snatch on Mulberry Street.

A. Me, C.L., E.Y. and B.P. was walkin on River Street. Then somebody said there go a lady. Then B. and E. started runnin toward her. E. hit her and B. grabbed the pocket book and then she fell. Then B. dragged her then he let her go. Then everybody started running. Then she start hollering. Then a guard came runnin out of that lot where they park the cars at by Kansas Chicken. That's all.